UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ALLSTATE INSURANCE COMPANY, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 5140 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| REGIONS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Allstate Insurance Company ("Allstate") filed this diversity action against defendant Regions Bank ("Regions"), alleging that Regions engaged in fraudulent or negligent misrepresentation and fraudulent concealment in connection with certain bonds that Allstate had purchased.[1] Regions has moved to transfer venue to the United States District Court for the Southern District of Alabama pursuant to 28 U.S.C. §§ 1404 or 1406.[2] For the following reasons, Regions' motion [19] is granted.

## BACKGROUND[3]

Logan Gewin, a real estate developer, acquired nearly 500 acres of undeveloped land in south Mobile County, Alabama. He planned to develop this land into an upscale, nature-based neighborhood community to be known as the Town of Saltaire ("Saltaire"). To finance

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1332.
[2] Regions also seeks, in the alternative, dismissal of Allstate's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court previously held briefing on Regions' motion to dismiss in abeyance. *See* Doc. 26.
[3] In addressing Regions' motion to transfer, the Court is not obligated to limit its consideration to the pleadings. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). Thus, the following facts are taken from the complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Allstate's favor. *Harris v. comScore, Inc.*, 825 F. Supp. 2d 924, 926 (N.D. Ill. 2011).

and promote Saltaire, Gewin formed Mobile Bay Investments, LLC ("MBI") on February 16, 2006.

John Arendall, a Vice President and Relationship Manager for Regions, became involved early on in the Saltaire project, representing that Regions would be Saltaire's principal financial backer and promising that Regions would provide approximately $20 million in first phase funding. Between December 2006 and December 2007, Arendall arranged for Regions to provide MBI with $6.5 million in provisional loans that were not secured by a first place mortgage. MBI also sought out bond funding by forming the Belle Fontaine Improvement District to fund Saltaire's infrastructure costs. Gardnyr Michael Capital, an investment banking firm, was engaged to help in forming this entity.

In December 2007, Allstate arranged to purchase $12.3 million of infrastructure bonds issued by the Belle Fontaine Improvement District. In anticipation of the bond closing, the bond trustee, at Allstate's direction, and Saltaire's developer, the Saltaire Development Group, which was affiliated with MBI, entered an "Agreement Regarding Use and Requisitioning of Bond Proceeds." Pursuant to the agreement, the bond trustee was not to release more than $1 million of the bond proceeds until Regions, which the agreement stated had a $14.5 million line of credit in favor of Saltaire, reached a $16 million commitment to Saltaire. Although Regions was not a party to the agreement, it became aware of the $16 million requirement through Arendall in January 2008.

After the bond closing on December 26, 2007, the bond trustee released only $1 million to Saltaire in accordance with the agreement. Saltaire, however, ran into cash flow problems soon thereafter, with Regions having determined that it would not provide additional funds until all bond proceeds had been released. As Arendall and Regions knew that Allstate and the bond

trustee believed that Regions had already invested $14.5 million in Saltaire, when indeed it had not, in order to obtain the release of the remaining bond proceeds, Regions only had to cause Allstate to think Regions had committed to the $16 million threshold. To do this, Regions issued a $2 million commitment letter in favor of MBI on January 30, 2008, which was provided to the developer and sent to Gardnyr Michael Capital. This letter was then ultimately presented to and accepted by the bond trustee and Allstate as satisfying the requirements of the agreement. The commitment, however, was never funded, but the remainder of the bond proceeds were released to Saltaire. Ultimately, Regions did not fulfill its commitments to Saltaire and Saltaire failed.

## ANALYSIS

**I.     Transfer Pursuant to 28 U.S.C. § 1406**

Regions first argues that this Court should transfer this case to the Southern District of Alabama pursuant to 28 U.S.C. § 1406 because venue is improper in this district. Section 1406 provides that, if venue is improper, the Court has the option to dismiss or transfer the suit to a district in which the plaintiff could have filed it initially. Venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Allstate contends that venue is proper under § 1391(b)(1) and (2).

Venue under § 1391(b)(2) "looks not to the defendant's contacts with the forum, but the location of the events giving rise to the cause of action." *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002). To be "substantial," the events in this district "must be a

3

part of the historical predicate of the claim." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004). Here, although the allegedly fraudulent commitment letter was issued in Alabama, Allstate has submitted a declaration indicating that it received that commitment letter at its home office in Northbrook, Illinois and relied on that commitment letter at its home office in deciding to authorize the release of the remaining bond proceeds. Ex. C to Allstate Opp., Declaration of Bill Grady ¶¶ 8–9. As detrimental reliance is an essential element of Allstate's claims, and Regions does not dispute that Allstate allegedly relied to its detriment on the commitment letter in this district, a substantial part of the events occurred in the Northern District of Illinois. *Print Data Corp. v. Morse Fin., Inc.*, Civ. No. 01-CV-4430(WGB), 2002 WL 1625412, at *6 (D.N.J. July 12, 2002) ("Without Plaintiff's detrimental reliance in New Jersey, there would be no fraud-related claims, therefore a substantial part of the events . . . giving rise to a claim inescapably occurred in New Jersey." (internal quotation marks omitted)); *see also Mercantile Capital Partners v. Agenzia Sports, Inc.*, No. 04 C 5571, 2005 WL 351926, at *5 (N.D. Ill. Feb. 10, 2005) (venue proper in this district where, among other things, plaintiff relied on misrepresentations sent to it in this district); *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 939 (E.D. Wis. 2006) (venue proper for fraud claim based on two communications containing alleged misrepresentations being sent to decedent in the district by defendants upon which decedent and/or her accountant relied); *Hispec Wheel &Tire, Inc. v. Tredit Tire & Wheel Co.*, No. 3:04-CV-340RM, 2005 WL 1983846, at *7 (N.D. Ind. Aug. 11, 2005) (venue proper on fraud claim where detrimental reliance occurred in Indiana).

Regions relies on *Prime Leasing, Inc. v. CMC Lease, Inc.*, in which the court found that venue was not proper under § 1391(b)(2) based on the mere effect of defendants' actions being felt in Illinois. No. 99 C 0449, 1999 WL 965688, at *3 (N.D. Ill. Oct. 15, 1999). But Allstate's

allegations undermine any suggestion that it was unexpectedly injured in Illinois; Allstate alleges that the "sole purpose" of Regions' commitment letter "was to convince Allstate and the Bond Trustee that Regions had now reached a $16 million commitment to Saltaire." Compl. ¶ 19. Allstate's reliance and injury in Illinois should have been directly foreseeable to Regions, a sophisticated entity that should have known that Allstate's home office is in Northbrook, Illinois. *See Print Data*, 2002 WL 1625412, at *6. Because a substantial part of the events giving rise to Allstate's claim took place in the Northern District of Illinois, venue is proper here pursuant to 28 U.S.C. § 1391(b)(2) and transfer pursuant to § 1406 is not appropriate.[4]

## II. Transfer Pursuant to 28 U.S.C. § 1404

In the alternative, Regions moves to transfer this action to the Southern District of Alabama pursuant to 28 U.S.C. § 1404(a), under which the Court may transfer venue to another district for "the convenience of parties and witnesses, in the interest of justice." For transfer to be appropriate under § 1404(a), Regions must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). Regions bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). The transfer decision is committed to the trial court's sound discretion, as the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey*, 796 F.2d at 219. Each factor is to be given the appropriate

---

[4] The Court need not address the parties' arguments as to whether venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1).

weight called for by the particular circumstances of the case. *Gueorguiev*, 526 F. Supp. 2d at 857.

As the Court has already determined that venue is proper in this district, the first factor is met. The parties do not contest that venue is also proper in the Southern District of Alabama. Thus, the Court turns to whether the convenience of the parties and the interest of justice would be served by transfer.

### A. Convenience of the Parties and Witnesses

In evaluating the convenience of the parties and witnesses, the Court considers (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses, and (5) the convenience of the parties in litigating in the respective forums. *See, e.g.*, *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999).

A plaintiff's choice of forum is typically entitled to substantial deference, particularly where the chosen forum is, as here, the plaintiff's home forum. *Brandon Apparel*, 42 F. Supp. 2d at 833. Allstate's choice, however, is not absolute, *Bryant*, 48 F. Supp. 2d at 832–33, and the deference paid to it is lessened "where the plaintiff's chosen forum . . . has relatively weak connections with the operative facts giving rise to the litigation." *Body Science LLC v. Boston Scientific Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012). As discussed above, Allstate relied on the commitment letter in this district, thus tying this forum to the litigation. But the deference to be paid to Allstate's choice is somewhat lessened where the remainder of the events, and the project itself, are all situated in the Southern District of Alabama.

Although Regions also argues that transfer is appropriate because the original documents relevant to the litigation are in Alabama, this does not weigh heavily in favor of transfer because

6

documents are presumed to be easily transportable. *See Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009) ("In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town."). The property at issue is located in Alabama, which may be of some limited relevance to a determination of damages and weighs slightly in favor of transfer. *See Amoco Oil Corp. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 961 (N.D. Ill. 2000) (where liability would likely depend on analysis of property, transfer to district encompassing property was appropriate).

In evaluating the convenience of the parties, the Court considers the parties' residences and their ability to bear the expense of litigating in each forum. *Brandon Apparel*, 42 F. Supp. 2d at 834. A case should not be transferred, however, merely to shift the inconvenience from one party to another. *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993). Regions argues that Allstate will not be prejudiced by the transfer because it has already retained Alabama counsel to represent it in this action. "The convenience and location of counsel has never been accorded weight in a transfer analysis," however. *Hemstreet v. Scan-Optics, Inc.*, No. 89 C 5937, 1990 WL 36703, at *4 (N.D. Ill. Mar. 9, 1990); *see also Humphries v. Coppercrest Leveraged Mortg. Fund*, 2012 WL 527528, at *4 (N.D. Ill. Feb. 15, 2012) ("[N]either the statute nor the case law identifies the location of counsel as a factor for the court's consideration in determining whether a case should be transferred under § 1404."); *Bank of Am., N.A. v. Illumination Station, Inc.*, No. 10 C 3061, 2011 WL 1642526, at *4 n.5 (N.D. Ill. May 2, 2011) (rejecting defendant's argument that its counsel's location in proposed transferor district, as well as plaintiff's existing relationships with attorneys in that district, indicated that it was more convenient to litigate there). Regions has not offered other evidence to demonstrate

that the burden of litigating in the Northern District of Illinois is so great that transfer is warranted based on this factor alone.

Regions has however, offered persuasive evidence that litigating this case in the Southern District of Alabama would be more convenient for non-party witnesses. "The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Brandon Apparel*, 42 F. Supp. 2d at 834 (quoting *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). The Court considers not just the number of witnesses located in each forum as identified by the parties but also the nature, quality, and importance of their testimony. *Id.*; *Rohde v. Cent. R.R. of Ind.*, 951 F. Supp. 746, 748 (N.D. Ill. 1997). The convenience of party witnesses is generally given little weight. *See Bullard v. Burlington N. Santa Fe Ry. Co.*, No. 07 C 6883, 2008 WL 4104355, at *4 (N.D. Ill. Aug. 28, 2008) ("Courts are less concerned about the burden that appearing at trial might impose on witnesses who are either employees of parties or paid experts; it is presumed that such witnesses will appear voluntarily."). Regions provided a list of twelve non-party witnesses, all of whom are within the subpoena power of the Southern District of Alabama.[5] Their proffered testimony appears relevant and necessary to this case, and Allstate's vague assertions that "several of the potential witnesses identified by Regions have no relationship to or knowledge related to the fraudulent commitment letter or the damages suffered by Allstate as a result thereof" is not sufficient to defeat Regions' specific descriptions. *See* Allstate Opp. at 19 n.14. Further, Allstate has only identified potential witnesses by name, without providing any indication of what testimony they would provide. *See* Ex. E to Allstate Opp., Declaration of Russel Myles ¶¶ 3–4. Only one of these witnesses is said to live or work in the Northern District of Illinois, with the remainder of the non-party witnesses Allstate identifies

---

[5] One of the identified witnesses serves as counsel for Allstate in this litigation. The Court does not include him further in its analysis.

not subject to the subpoena power of either the Northern District of Illinois or the Southern District of Alabama. Based on the information provided by the parties, this factor weighs heavily in favor of transfer.

### B. Interest of Justice

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Courts consider factors such as the likelihood of a speedy trial, each court's familiarity with the applicable law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Research Automation*, 626 F.3d at 978; *Coffey*, 796 F.2d at 220. Analyzing each factor in turn, the Court finds overall, the interest of justice weighs in favor of transfer.

Regions argues that transfer will increase judicial efficiency because the average caseload per judge is less in the Southern District of Alabama than it is in this district. The average time from filing to disposition in civil cases in this district, 6.6 months, is actually less than the average time in the Southern District of Alabama, 8.4 months.[6] The Southern District of Alabama has not reported the average time from filing to trial, as only seven cases proceeded to trial there in the reported period, whereas 104 cases proceeded to trial in this district, taking an average of 33.7 months to get to trial. The Court thus finds this factor neutral.

The parties dispute which state's law applies to Allstate's claims. The Court need not resolve this dispute at this time, for the common law of fraud does not vary significantly from state to state and so this factor is neutral.

---

[6] These figures come from the website of the United States Courts detailing federal court management statistics as of March 2013. *See* http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2013/tables/C05Mar13.pdf.

However, litigation related to the Saltaire project has already occurred or remains pending in Alabama, to which Regions, but not Allstate, remains a party. The Southern District of Alabama also has a greater relationship to the controversy, as it encompasses a larger fraud and failed development in that district. As a whole, the interest of justice factors weigh slightly in favor of transfer. This, in combination with the convenience to non-party witnesses, establishes that transfer to the Southern District of Alabama is warranted.

## CONCLUSION

For the foregoing reasons, Regions' motion to transfer venue [19] is granted. The Clerk is directed to transfer this case to the Southern District of Alabama.

Dated: February 4, 2014

SARA L. ELLIS
United States District Judge